**FISCELLA & FISCELLA, a Virginia General Partnership, and Virginia Enterprises, Inc., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 89–522–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 10, 1989.

Richard R. Nageotte, Nageotte & Borinsky, Woodbridge, Va., for plaintiffs.

Donald A. Carr, Acting Asst. Atty. Gen., Land and Natural Resources Div. and Letitia J. Grishaw, Asst. Chief, Environmental Defense Sec. U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., Henry E. Hudson, U.S. Atty., J. Phillip Krajewski, Asst. U.S. Atty., Norfolk, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on plaintiff Fiscella & Fiscella's Motion for a preliminary injunction. An evidentiary hearing was conducted, the parties have fully briefed the issues, and the matter is therefore ripe for disposition.

This action arises from a cease-and-desist letter issued by the United States Army Corps of Engineers (Corps) (Plaintiff's Ex. 8). Plaintiff Fiscella & Fiscella (Fiscella) is the owner of the Nelson Farms property located in the City of Hampton, Virginia. Plaintiff Fiscella has constructed roads and utilities in preparation for development and sale of Sections I and II of the Nelson Farms subdivision. Plaintiff Fiscella sold 50 lots to the plaintiff Virginia Enterprise, Inc. who constructed or partially constructed 50 single family residences.

On March 2, 1989 Nicholas Konchuba, an environmental scientist with the Corps, conducted an on-site inspection of the Nelson Farms property. Konchuba preliminarily concluded that the site contained wetlands, and that the construction work being conducted on the site constituted illegal filling activities. On March 3, 1989, Konchuba prepared an intra-office Initial Complaint Report which was forwarded to management within the Waterways Inspection Division. (Plaintiff's Ex. 9). The report summarized Konchuba's observations and determination that illegal filling activities were being conducted on wetlands. On June 30, 1989, some four months after Konchuba's report, the Corps issued the cease-and-desist order at issue in this case.

The cease-and-desist order provides in pertinent part:

A recent inspection ... has revealed the unauthorized fill of wetlands at your development site.... Your unauthorized filling project may be in direct violation of Section 404 of the Clean Water Act (33 U.S.C. § 1311 and § 1344)....

This letter constitutes formal notice to you to cease and desist any and all unauthorized activities in the waters and wetlands of Brick Kiln Creek, or other waters of the United States.

You are advised that work performed in violation of Section 404 of the Clean Water Act ... carries penalties of up to $25,000 per day for each day the violation occurs (33 U.S.C. § 1319(d)).

(Plaintiff's Ex. 8). The plaintiffs testified that after receiving the cease-and-desist order they terminated any construction or development on the site.

On July 11, 1989, the plaintiffs filed a Complaint and Petition for Temporary Restraining Order in this matter. The plaintiff predicates jurisdiction on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, and federal question

jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs allege that the Corps' assertion of jurisdiction over plaintiffs' real property under the Clean Water Act (CWA), 33 U.S.C. § 1251, *et seq.*, creates an actual controversy within the meaning of the Declaratory Judgment Act. Plaintiffs also seek a preliminary injunction prohibiting the government from enforcing the June 30, 1989 cease-and-desist order.

This matter comes before the Court in an unusual procedural posture. The plaintiffs allege in their Complaint that to the best of their knowledge the Corps, prior to the issuance of the cease-and-desist order, never made any jurisdictional determination concerning the site. (Plaintiffs' Complaint ¶ 21). Furthermore, the testimony of Nicholas Konchuba and John Evans, environmental scientists from the Corps, reveals that a detailed wetlands delineation has not been conducted on the site. Therefore, the Corps' only assertion of jurisdiction in this matter is the cease-and-desist order informing plaintiffs that they may be in violation of the CWA.

The CWA is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Under 33 U.S.C. §§ 1311 and 1362, any discharge of dredge or fill materials into "navigable waters" or "waters of the United States" is forbidden unless authorized by a permit issued by the Corps pursuant to § 404, 33 U.S.C. § 1344. The EPA continues to carry ultimate responsibility for the concerns of the CWA, including determinations of what constitutes "navigable waters" for purposes of § 404. *See Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 903 n. 12 (5th Cir.1983); 43 Op.Att'y Gen. No. 15 (Sept. 5, 1979). The term "navigable waters" is defined as "waters of the United States including the territorial seas." 33 C.F.R. § 328.1 (1988). The term "waters of the United States" means "wetlands adjacent to waters (other than waters that are themselves wetlands)...." 40 C.F.R. § 230.3(5)(7) (1988). For purposes of the § 404 permit program, "wetlands" are:

those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs, and similar areas.

40 C.F.R. § 328.3(b) (1988). Finally, as it applies to the jurisdictional limits of the Corps' authority, "adjacent" means "bordering, contiguous, or neighboring." 33 C.F.R. § 328.3(c) (1988). The regulations further provide that "wetlands separated from other waters of the United States by man-made dikes or barriers, natural riverberms, beach dunes, and the like are 'adjacent wetlands.'" *Id.*

The plaintiffs concede that the Nelson Farms site contains "wetlands" as that term is defined in the regulations. Plaintiffs take the position, however, that the Corps is without authority to assert jurisdiction over the site because it is not an "adjacent" wetland. The Corps argues that the structure and objectives of the CWA's enforcement scheme precludes pre-enforcement review of a cease-and-desist order. *See, Hoffman Group Inc. v. EPA,* 29 Env't. Rep. Cas. 1180 (N.D.Ill.1989). The plaintiffs counter that the issue of whether the site is an isolated or adjacent wetland is a "purely legal" issue capable of judicial resolution. *See, A.O. Smith v. Federal Trade Commission,* 530 F.2d 515, 521 (3d Cir.1976). While the Court is of the opinion that the question of adjacency is factual and not purely legal, the Court need not reach that issue as it otherwise lacks subject-matter jurisdiction to hear this matter.

The plaintiffs have alleged that this Court has jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. § 1331, the federal question statute. The Declaratory Judgment Act authorizes a federal court to give a declaratory judgment only with respect to "a case of actual controversy *within its jurisdiction.*" 28 U.S.C. § 2201 (emphasis added). The Fourth Circuit in *Delavigne v. Delavigne,* 530 F.2d

598, 601 (4th Cir.1976) found that, "It is axiomatic that the Act does not supply its own jurisdictional base, and where jurisdiction is lacking, declaratory relief should be denied." *Citing Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Thus, the remaining issue is whether Section 1331 provides the plaintiffs with access to the federal courts under the CWA.

A suit "arises under" federal law if federal law creates the cause of action. *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916); *City National Bank v. Edmisten*, 681 F.2d 942, 945 (4th Cir.1982). In *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Supreme Court addressed the issue of whether an implied right of action existed under the CWA. The Court began its analysis by noting that the CWA confers the right to sue on both government officials and private citizens. *Id.* at 13, 101 S.Ct. at 2622. The CWA authorizes the EPA administrator to respond to violations of the Act with compliance orders and civil suits. 33 U.S.C. § 1319. The administrator may seek civil penalties of up to $25,000 per day, as well as criminal penalties. 33 U.S.C. § 1319(c) and (d). Moreover, "any interested person" may seek judicial review in the United States Court of Appeals of the various actions of the administrator in establishing effluent standards and issuing discharge permits. 33 U.S.C. § 1369(b) (1989).

These enforcement mechanisms are supplemented by the citizens-suit provisions contained in 33 U.S.C. § 1365. Section 1365(a)(1) provides a cause of action against any person or governmental instrumentality "alleged to be in violation of ... an effluent standard or limitation under this chapter." This section provides a cause of action against one discharging pollutants into a waterway and therefore is of no assistance to the plaintiffs in the case at bar. *See, City of Las Vegas v. Clark County*, 755 F.2d 697, 703 (9th Cir.1985). Similarly, Section 1365(a)(2) provides a

cause of action against the administrator where there is an alleged failure of the administrator to perform a nondiscretionary duty under 33 U.S.C. § 1313(d). Again, this provision of the statute does not provide plaintiffs with a cause of action. *Id.*

Finally, Section 1365 contains a savings clause which provides that, "Nothing in this section shall restrict any right which any person ... may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief...." 33 U.S.C. § 1365(e). The Supreme Court in *Middlesex* rejected the Court of Appeals argument that the Section 1365(e) savings clause coupled with Section 1331 provides an independent remedy for injured parties. *Middlesex*, 453 U.S. at 15–18, 101 S.Ct. at 2623–2625. The Court in *Middlesex* concluded that Congress intended to limit access to federal court to enforce the CWA to the express enforcement provisions of the Act which precludes suit brought under 28 U.S.C. § 1331 and 42 U.S.C. § 1983. *Id.* at 21, 101 S.Ct. at 2627. *See, City of Las Vegas*, 755 F.2d at 703. The Supreme Court in *Middlesex* explicitly held:

> Both the structure of the [CWA] and [its] legislative history lead us to conclude that Congress intended that private remedies in addition to those expressly provided should not be implied. Where, as here, Congress has made clear that implied private actions are not contemplated, the courts are not authorized to ignore this legislative judgment.

*Middlesex*, 453 U.S. at 18, 101 S.Ct. at 2625. Therefore, even if plaintiff had alleged a cause of action under Section 1365(e), it would not provide this Court with subject-matter jurisdiction. Accordingly, the Court finds that the enforcement provisions of the CWA do not provide plaintiffs in the instant case with a cause of action, nor does the CWA afford plaintiffs an implied right of action.

Although the Court need not reach the issue, the Court also finds that plaintiffs' attempt to enjoin the Corps from asserting jurisdiction constitutes pre-enforcement review and encroaches on the duties

and expertise of the Corps. This Court is of the opinion that pre-enforcement review is inconsistent with the enforcement scheme of the CWA. The Court finds the decision in *Hoffman Group Inc. v. EPA,* 29 Env't Rep. Cas. 1180 (N.D.Ill.1989) to be a correct interpretation of the CWA. In *Hoffman,* the plaintiffs brought an action seeking declaratory and injunctive relief from the enforcement of a compliance order issued by the EPA. The district court in *Hoffman* found that plaintiffs' Complaint challenged the factual determinations of the EPA in delineating wetland boundaries. The *Hoffman* court concluded that "Congress intended for judicial review of a compliance order to occur if and when the EPA seeks to enforce the order in district court under 33 U.S.C. § 1319(b)." *Id.* at 1183.

As a general rule, parties are required to exhaust administrative remedies before resorting to the courts. *Deltona Corp. v. Alexander,* 682 F.2d 888, 893 (11th Cir. 1982). The Eleventh Circuit in *Deltona* noted that,

> The exhaustion rule serves a number of policies, including promoting consistency in matters which are within agency discretion and expertise, permitting full development of a technical issue and factual record prior to court review, and avoiding unnecessary judicial decision by giving the agency the first opportunity to correct any errors and possibly moot the need for court action.

*Id.* The circuit courts which have considered the issue have held that the agency should be given the first opportunity to consider a challenge to its jurisdiction. *Id.*

Despite plaintiffs' assertions to the contrary, the Court finds that the question of whether the Nelson Farms property is an adjacent or isolated wetland is a factual and not a purely legal issue. Plaintiffs argue that a contrary conclusion is warranted because the existence, not the extent, of agency jurisdiction is at issue in this case. *See, Avoyelles Sportsmen's League,* 715 F.2d at 906. The Court finds, however, that the existence of the Corps' jurisdiction in the case at bar is a factual issue properly left to the expertise of the agency. In the instant case, the Corps should be given the initial opportunity to consider the adjacency issue and develop a record for judicial review.

Finally, the Court finds that plaintiffs' attempt to seek pre-enforcement review of the Corps' jurisdictional decision not only encroaches on the Corps' expertise, but also, constitutes an attempt to make an end-run around the Administrative Procedures Act, 5 U.S.C. § 702. If plaintiffs were allowed to maintain this action, federal courts would always become embroiled in the intricacies of initially determining whether a site is a "wetland" or "adjacent wetland." These matters are properly left to the expertise of the Corps, the administrative agency chosen by Congress to make such determinations.

Accordingly, plaintiffs' Complaint and Petition for Temporary Restraining Order are DISMISSED with prejudice.

The Clerk is DIRECTED to send a copy of this Order to counsel for the plaintiffs and defendants.

IT IS SO ORDERED.