Gordon B. HOWELL, Plaintiff,

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, Andrew Rosenau, James Wood, Robert Meehan, and Michael DeBow, Defendant.**

**No. CIV. 92–0139–HB.**

United States District Court,
D. New Mexico.

July 1, 1992.

Norman S. Thayer, Albuquerque, N.M., for plaintiff.

Raymond Hamilton, Albuquerque, N.M., Rebecca A. Lloyd, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BRATTON, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having considered the motion, memoranda in support and in opposition, and the applicable law, the Court finds that the motion pursuant to Rule 12(b)(1) is well-taken and should be granted.

In his amended complaint, plaintiff challenges the authority of the Corps to issue a "cease and desist" letter. In the letter, defendant DeBow, the District Engineer, advised plaintiff that defendant Wood had determined plaintiff's property contained wetlands, and that plaintiff could no longer place fill material into his property without violating Section 404 of the Clean Water Act. DeBow also told the plaintiff:

We intend to conduct a wetland delineation on your property to determine in detail the extent of wetlands initially investigated by Mr. Wood. You may also submit to this office any information about this area that will assist in this delineation. You may include any other information you deem pertinent. This information should be submitted to this office no later than July 24, 1992, as stated by Mr. Wood previously.

When all of the available information has been reviewed and our wetland delineation has been completed and verified, I will request you to apply for an after-the-fact permit. You also have the option of voluntarily restoring the area. I must advise you that it is possible that authorization may have to be denied if your work is not found to be in the public interest. Should that occur, I may require you to remove all fill materials deposited in the wetlands and restore them to their original condition. You will also be notified if, based on a review of the available information, our wetland determination is subsequently modified.

After he received the letter, plaintiff promptly filed a complaint in this Court requesting the Court to "enter judgment declaring that the Subject Property in not 'wetlands' as defined by law, that the Corps lacks jurisdiction over the Subject Property, and to reverse the 'wetlands' determination of the Corps and any cease and desist order or other enforcement action that the Corps may take."

Defendants contend this Court may not review their action because (a) the Clean Water Act precludes judicial review at this time; (b) plaintiff's claim is not ripe for review at this time; and (c) plaintiff has not yet exhausted his administrative remedies. The Court agrees with all three contentions.[1]

■ It is now the law of at least two circuits that the Clean Water Act precludes review of compliance orders issued by the Environmental Protection Agency. *See*

*Southern Pines Assoc. v. United States,* 912 F.2d 713 (4th Cir.1990); and *Hoffman Group, Inc. v. Environmental Protection Agency,* 902 F.2d 567 (7th Cir.1990). Although the instant case involves an Army Corps of Engineers cease-and-desist letter rather than an EPA compliance order, both circuit courts held a landowner may not seek judicial review of agency action pursuant to the Clean Water Act until the agency assesses civil penalties or brings its own enforcement action. *See McGown v. United States,* 747 F.Supp. 539, 542 (E.D.Mo. 1990). This Court finds the reasoning in the two cases persuasive and applicable to this case.

■ The Clean Water Act, 33 U.S.C. §§ 1251–1376, specifically provides for jurisdiction in federal court in only two situations. First, a landowner may challenge civil penalties after they are assessed, and after administrative review is complete, pursuant to § 1319(g). Alternatively, the agency may choose to bring a civil action for injunctive or other relief pursuant to § 1319(b). By providing for judicial review at only these junctures, Congress clearly intended for agencies to "act to address environmental problems quickly and without becoming immediately entangled in litigation." *Southern Pines,* 912 F.2d at 716.

Additionally, the Court finds that under settled Tenth Circuit law, the agency action involved here is not ripe for review. *See Ash Creek Mining Co. v. Lujan,* 934 F.2d 240 (10th Cir.1991). The ripeness doctrine "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). It is clear from the cease-and-desist letter quoted above that the Corps will not finalize its decision until it conducts its "wetland delineation" and decides whether to issue a permit. Only at that time, and perhaps not until the Corps forces compliance through

1. Defendants' fourth basis for dismissal, that this Court has no jurisdiction to entertain certain constitutional claims plaintiff alleged in his

amended complaint, has been rendered moot by plaintiff's withdrawal of those claims in his response to the motion to dismiss.

penalties or judicial action, will the plaintiff know the concrete effects of the Corps' decision.

■ Four specific factors guide the Court's decision whether an agency action is ripe for review: (1) whether the issues in the case are purely legal; (2) whether the action is "final agency action" within the meaning of the Administrative Procedure Act; (3) whether the action has or will have a direct and immediate impact upon the plaintiff, and (4) whether the resolution of the issues will promote effective enforcement and administration by the agency. *Ash Creek*, 934 F.2d at 243 (citing *Abbott Laboratories*, 387 U.S. at 149–54, 87 S.Ct. at 1515–18). The Court will analyze each factor in turn.

■ First: The issue plaintiff wants this Court to decide, whether his property contains wetlands, is not a purely legal issue. The issue concerns factual determinations properly resolved through agency expertise and reviewable by this Court once a record is developed by the agency. *See Fercom Aquaculture Corp. v. United States*, 740 F.Supp. 736, 739 (E.D.Mo.1990); *Fiscella & Fiscella v. United States*, 717 F.Supp. 1143, 1147 (E.D.Va.1989).

Second: The cease-and-desist letter is not "final agency action." A final action must "impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." *Ash Creek*, 934 F.2d at 243 (quoting *Chicago and Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948)). The letter is only the beginning of the administrative process, not its consummation. The determination of the wetlands status of plaintiff's property is preliminary only and subject to change during the investigatory period. It does not "impose an obligation" on plaintiff, it merely advises him of the Corps' non-final opinion.

Third: The cease-and-desist letter has no direct and immediate impact upon the plaintiff. He may receive an after-the-fact permit to fill his property, or he may eventually be penalized or sued for doing so. The Corps may even determine his activities do not impact wetlands at all. This is not a situation, as in *Abbott Laboratories*, where "the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to non-compliance." 387 U.S. at 153, 87 S.Ct. at 1518. *See also Fercom Aquaculture*, 740 F.Supp. at 740. At this point, there are no penalties attached to non-compliance other than the obvious burdens associated with supplying information to the Corps and applying for the permit, and that is not enough to confer jurisdiction upon this Court. *Cf. Route 26 Land Dev. Ass'n v. United States*, 753 F.Supp. 532, 540 (D.Del.1990), *aff'd*, 961 F.2d 1568 (3d Cir.1992).

Fourth: The resolution of the issues at this stage of the proceedings will not promote effective enforcement and administration by the agency. Forcing the agency into litigation before it completes its wetlands delineation and permitting process will frustrate the statutory scheme that allows the agency to resolve violations in a flexible manner without judicial interference. *Id.*

Accordingly, under the four-factor test prescribed by *Ash Creek*, this matter is not yet ripe for judicial review.

■ Finally, the Court also finds the plaintiff is required to exhaust his administrative remedies through the permitting process. The doctrine of exhaustion of administrative remedies, like the statutory scheme of the Clean Water Act and the ripeness doctrine, allows an agency to develop facts and make a decision based on its particular expertise. Once the agency does so, court intervention may be avoided, but if court action is necessary, the court will have an adequate record upon which to rule. *See Franks v. Nimmo*, 683 F.2d 1290, 1294 (10th Cir.1982).

Although the Court has discretion not to apply the exhaustion doctrine, the Court finds the interests promoted by the doctrine would be advanced by requiring exhaustion in this case. Review at this time would prematurely interrupt the adminis-

trative process—the agency has not yet had sufficient time to apply its expertise, take appropriate action, and develop a full factual record. *Cf. Park County Resource Council v. United States Dep't of Agriculture,* 817 F.2d 609, 619 (10th Cir.1987).

NOW, THEREFORE,

In accordance with the above, the Court grants defendants' motion to dismiss and the action will be dismissed.