Harold G. RUETH, doing business as Rueth Development Company, Plaintiff–Appellant,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, United States Army, Corps of Engineers, G. Edward Bickey, Acting Assistant Secretary of the Army, et al., Defendants–Appellees.

No. 92–4139.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1993.

Decided Dec. 30, 1993.

Michael L. Muenich (argued), Nancy Beggs, Hand, Muenich & Wilk, Highland, IN, for plaintiff-appellant.

Orest S. Szewciw, Asst. U.S. Atty., Office of the United States Atty., Dyer, IN, Evelyn S. Ying (argued), Department of Justice, Land & Natural Resources Div., Washington, DC, for defendant-appellee.

Before POSNER, Chief Judge, COFFEY, Circuit Judge and ZAGEL, District Judge.*

COFFEY, Circuit Judge.

The appellant, Harold Rueth, doing business as Rueth Development Company, Inc. ("Rueth"), brought this action in the district court seeking to restrain the government from asserting jurisdiction under the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, over property Rueth was developing. The district court granted the government's Fed.R.Civ.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction because the EPA had not issued a final order nor sought administrative penalties against Rueth. We affirm.

### BACKGROUND

On January 22, 1991 the Army Corps of Engineers ("the Corps") notified the plaintiff that it failed to obtain a permit and its discharges of dredged and fill materials into wetlands were unauthorized. The wetlands were located in the Castlewood subdivision, a residential development owned by Rueth in Lake County, Indiana. Rueth responded to the Corps by requesting identification of the exact areas in which the unauthorized discharges occurred. On April 11, 1991 the Environment Protection Agency ("EPA"), which has concurrent jurisdiction with the Corps to enforce the Clean Water Act, issued a compliance order under § 309(a) of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1319(a). The order recited the EPA's findings that Rueth had filled approximately three acres of wetlands and navigable waters without a permit. The EPA ordered Rueth to cease all discharges into the wetlands and to commence restoration of the wetlands. Rueth sought after-the-fact approval of its filling from the Corps under nationwide permits.[1] The Corps declined to authorize Rueth's filling under nationwide permit No. 26 noting that it appeared that Rueth was attempting to present its development plans in a "piecemeal" fashion to avoid a comprehensive review of the cumulative environmental impact. The Corps stated that if Rueth altered its plans in such a manner that less than ten acres of wetlands would be affected, the Corps would reconsider its position.

On May 6, 1991, Rueth filed a complaint seeking injunctive relief and a declaratory judgment against the government's unauthorized exercise of jurisdiction over the Castlewood subdivision. The district court granted the government's motion for dismissal because the EPA had not issued a final appealable order.

### The Clean Water Act

The Clean Water Act is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of

---

* The Honorable James B. Zagel, District Judge for the Northern District of Illinois, is sitting by designation.

1. Nationwide permits are general permits designed to regulate activities that have minimal impact on the nation's waters. The Corps is authorized to draft and adopt nationwide permits after receiving public comment. After a nationwide permit has been adopted by the Corps, in most cases a party seeking to proceed with some activity under the permit may do so without notifying the Corps unless the specific nationwide permit requires notification of the Corps. When a party is uncertain if a proposed activity, for instance filling an isolated wetland, falls under a nationwide permit, the party should seek prior approval of the Corps or seek an individual permit. 33 C.F.R. § 330.

the Nation's waters." 33 U.S.C. § 1251(a); *Hoffman Group, Inc. v. EPA,* 902 F.2d 567, 568 (7th Cir.1990). The Act seeks to control the discharge of pollutants into the waters of the United States. 33 U.S.C. § 1251(a)(1). To achieve the purposes of the Act, Congress prohibited discharge of any pollutants, including dredged or other fill material, except in accordance with the Act. 33 U.S.C. § 1311(a). The Act authorizes the Army Corps of Engineers, to issue permits for discharges of dredged or fill material "into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a). The discharge of dredged or fill material into navigable waters without a permit violates the Act which defines "navigable waters" as "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The EPA and the Corps of Engineers have adopted regulations defining "waters of the United States" to include numerous bodies of water including wetlands. 33 C.F.R. § 328.3(a); 40 C.F.R. § 230.3(s).

The Corps is authorized to issue two different types of permits. Nationwide permits, are "designed to regulate with little, if any, delay or paperwork certain activities having minimal impacts." 33 C.F.R. § 330.1. Public comment is required only when the Corps sees fit to promulgate the standards for a nationwide permit and not with each and every activity by a developer under the permit. Rueth sought to have the Corps approve its filling of the wetlands after-the-fact under nationwide permit No. 26 which covers "[d]ischarges of dredged or fill material into headwaters and isolated waters provided" that "the discharge does not cause the loss of more than ten acres of waters of the United States . . . ." 33 C.F.R. pt. 330, App. A, B.26(a). The second type of permit authorizing discharge of dredged or fill material is an individual permit which is issued for a specific site as opposed to a nationwide permit covering many sites. Individual permits are only issued after extensive administrative proceedings and investigation which include site-specific documentation, public notice and consideration of all public comments on the specific activity. 33 U.S.C. § 1344(a); 33 C.F.R. §§ 323, 325.

As mentioned above, enforcement of the Clean Water Act is shared jointly by the Corps and the EPA. The EPA may issue compliance orders to violators of the Act, it may assess an administrative penalty, and it may commence an enforcement action in the U.S. District Court. *See* 33 U.S.C. § 1319(a), (b), (g). Likewise, the Corps may issue a cease and desist order pursuant to 33 C.F.R. § 326.3(c)(1). If the violation continues after the cease and desist order, the government is authorized to bring an enforcement action in the district court, 33 U.S.C. § 1319(b), as well as pursuing administrative enforcement under 33 C.F.R. § 326.6.

The only issue presented in this appeal is whether the trial court properly granted the government's motion to dismiss the plaintiff's complaint due to lack of subject matter jurisdiction.

## DISCUSSION

When ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir.1993). We "review[ ] dismissals for lack of subject matter jurisdiction *de novo.*" *Id.; Joyce v. Joyce,* 975 F.2d 379, 382 (7th Cir.1992) ("[w]e review de novo a dismissal for lack of subject matter jurisdiction"). The district court held that based on this circuit's precedent and the statutory history of the Clean Water Act, the EPA's or Corps' pre-enforcement activities are not subject to judicial review. The court cited *Hoffman Group, Inc. v. EPA,* 902 F.2d 567 (7th Cir.1990), to support the idea that Congress intended to preclude judicial review of an EPA compliance order unless the government initiated an enforcement action in the U.S. District Court. The court concluded that "if agency compliance orders are not reviewable until the enforcement stage, an agency's initial determination that it has the authority to either require permitting or issue orders in the absence of a permit application must also be unreviewable." *Rueth v. United States E.P.A.,* Mem. op. at 5, 1992 WL 560944 (Nov. 24, 1992).

The facts in *Hoffman* are quite similar to those before us today. Hoffman, a residential developer, was constructing a subdivision in the Chicago area when it discharged fill into two wetlands of about 6.2 acres without a permit. The Corps issued a cease and desist order notifying Hoffman that a permit was required. The EPA issued a compliance order as well under § 309(a) of the CWA requiring Hoffman to cease discharging fill into the wetlands and to restore those areas already filled. Hoffman sought review of the EPA compliance order in district court but the court dismissed the case and we affirmed holding that Congress "chose not to make a compliance order judicially reviewable unless the EPA decides to bring a civil suit to enforce it." *Hoffman*, 902 F.2d at 569. Additionally, we noted that an alleged violator can obtain judicial review if the EPA seeks to assess administrative penalties which Congress also chose to make subject to judicial review.

Rueth tries to distinguish its case from *Hoffman* by arguing that Hoffman was challenging a compliance order while Rueth is challenging the government's right to assert jurisdiction over the isolated wetlands in the Castlewood development. This alleged distinction falls short of persuading us for *Hoffman* makes clear that Congress intended judicial review of challenges to agency administrative actions only after the agency seeks judicial enforcement of a compliance order or the agency seeks to enforce administrative penalties. Neither of these situations are present in the case before us and thus judicial review is unavailable at this time. *See Southern Pines Assoc. v. United States*, 912 F.2d 713 (4th Cir.1990). In *Southern Pines*, the plaintiff, also a develop-

er challenging the EPA's jurisdiction over an isolated wetland, tried to draw the same distinction between its case and *Hoffman* as Rueth tries to draw before us, i.e., that it was a challenge to EPA jurisdiction and not a challenge to an EPA compliance order. But the Fourth Circuit stated "[a]llowing the parties to challenge the existence of EPA's jurisdiction would delay the agency's response in the same manner as litigation contesting the extent of EPA's jurisdiction. [The plaintiffs] can contest the existence of EPA's jurisdiction if and when EPA seeks to enforce the penalties provided by the Act." *Id.* at 717.

It is inappropriate at this stage of the administrative process to interfere with the agency's factfinding. *See, e.g., Howell v. United States Army Corps of Engineers*, 794 F.Supp. 1072, 1075 (D.N.M.1992) (ascertaining whether wetlands are covered by CWA "concerns factual determinations properly resolved through agency expertise and reviewable by this Court once a record is developed by the agency"). Once the EPA determines that the Castlewood property is a wetland covered under the CWA and seeks judicial or administrative enforcement of penalties against the plaintiff, then Rueth will be entitled to his day in Court.[2]

We acknowledge that our holding places Rueth somewhat in limbo until such time as the EPA seeks to enforce the compliance order or assess administrative penalties. In the interim, we are cognizant of the fact that Rueth might conceivably encounter some problems, such as securing bank loans or obtaining title insurance. Responsibility for this predicament does not fall entirely on the EPA and the Corps of Engineers, as any reasonable and experienced developer such

2. Our holding is also supported by *Howell*, 794 F.Supp. at 1075 ("[f]orcing the agency into litigation before it completes its wetlands delineation and permitting process will frustrate the statutory scheme that allows the agency to resolve violations in a flexible manner without judicial interference"); *Leslie Salt Co. v. United States*, 789 F.Supp. 1030, 1033–34 (N.D.Cal.1991) ("issuance of cease and desist orders are not sufficient to create jurisdiction in this court"); *Mulberry Hills Dev. Corp. v. United States*, 772 F.Supp. 1553, 1557–58 (D.Md.1991) (CWA does not allow for pre-enforcement review of cease and desist orders); *Route 26 Land Dev. Ass'n v.*

*United States Government*, 753 F.Supp. 532, 540 (D.Del.1990) ("the regulatory scheme of the CWA impliedly precludes ... review of [the Corps' assertion of jurisdiction]"), *aff'd without opinion*, 961 F.2d 1568 (3rd Cir.1992); *McGown v. United States*, 747 F.Supp. 539, 542 (E.D.Mo.1990); *Fiscella & Fiscella v. United States*, 717 F.Supp. 1143, 1147 (E.D.Va.1989) ("the existence of the Corps' jurisdiction in the case at bar is a factual issue properly left to the expertise of the agency.... [t]he Corps should be given the initial opportunity to [determine jurisdiction] and develop a record for judicial review").

as Rueth should have known that the wetlands were potentially subject to regulation. Perhaps Rueth is in its present predicament because it attempted to short cut and take an end-run around the permit requirement. Indeed, the prudent course for any developer is to secure the necessary permits prior to commencing construction. This is what the Clean Water Act mandates in § 1344(a) when it requires developers to obtain permits prior to filling wetlands. Of course, Rueth now argues that it had no idea the wetlands at the Castlewood development were "waters of the United States." As our decision in *Hoffman Homes, Inc. v. EPA*, 999 F.2d 256, 261 (7th Cir.1993), makes clear, however, nearly all wetlands fall within the jurisdiction of the CWA since one test for whether the wetland affects interstate commerce is whether migratory birds use the wetland. *Id.* Decisions such as *Hoffman Homes*, give full effect to Congress's intent to make the Clean Water Act as far-reaching as the Commerce Clause permits. On the other hand, it is not inconceivable that the EPA or the Corps of Engineers might completely overextend their authority. In such a case, we suggest to those agencies that we will not hesitate to intervene in pre-enforcement activity, but this is not the case as we are of the opinion that the wetland at issue falls under the broad definition of "waters of the United States" in *Hoffman Homes*.

█ Rueth also argues that the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, provides jurisdiction for its appeal. Judicial review may be obtained for final agency action under the APA "except to the extent that ... statutes preclude judicial review...." 5 U.S.C. § 701(a)(1); *see Abbott Laboratories v. Gardner*, 387 U.S. 136, 139–40, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967) (in determining whether to review a regulation that had not been enforced, the Court first considered whether or not Congress intended to forbid pre-enforcement review).[3] In this case, as we held above, the Clean Water Act provides for judicial review only when the agency is seeking judicial enforcement of a compliance order or the agency is seeking administrative penalties. Since neither of these requirements are met, the CWA precludes judicial review and accordingly the APA also precludes judicial review. *Id.; Howell*, 794 F.Supp. at 1075 ("[t]he cease-and-desist letter is not 'final agency action.' ... [It] is only the beginning of the administrative process, not its consummation.").[4]

█ Finally, Rueth argues that jurisdiction is proper under the Declaratory Judgments Act, 28 U.S.C. § 2201, 2202. The Declaratory Judgment Act empowers federal courts to give declaratory judgments in "a case of actual controversy within its jurisdiction," *id.* § 2201, but it is not an independent grant of jurisdiction, rather jurisdiction must be predicated on some other statute. Because we held above that we lack jurisdiction under the Clean Water Act to review EPA's pre-enforcement actions, we cannot grant a declaratory judgment. *See A.G. Edwards & Sons, Inc. v. Public Bldg. Comm'n*, 921 F.2d 118, 120 n. 2 (7th Cir.1990).

AFFIRMED.

---

3. We add that, as *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), teaches, the APA is not a fertile source of implied jurisdiction since Congress amended 28 U.S.C. Sec. 1331 after the decision in *Abbott Laboratories v. Gardner, supra.*

4. The appellant also argues in his brief that the government's assertion of jurisdiction over its isolated wetland is subject to judicial review under the authority of *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Rueth did not raise this argument before the district court and thus it has been waived on appeal. *Hickey v. Chicago Truck Drivers*, 980 F.2d 465, 470 (7th Cir.1992) ("[f]ailure to present an argument to the district court waives that argument on appeal").