58 F.3d 564
 40 ERC 2054, 25 Envtl. L. Rep. 21,192
 LAGUNA GATUNA, INC., a New Mexico Corporation, Plaintiff-Appellant,
v.
Carol BROWNER, Administrator of the Environmental Protection
Agency; Joe D. Winkle, Acting Regional Administrator,
Region VI of the Environmental Protection Agency;
Environmental Protection Agency, Carol M. Browner,
Administrator, Defendants-Appellees,
Stone Southwest Corporation, a Delaware Corporation, Intervenor.
 No. 94-2142.
 United States Court of Appeals,
Tenth Circuit.
 June 20, 1995.
 
 Todd S. Welch (William Perry Pendley with him on the briefs), Mountain States Legal Foundation, Denver, CO, for plaintiff-appellant.
 John A. Bryson (Robert L. Klarquist and Joshua M. Levin, Dept. of Justice, Washington, DC, Lois J. Schiffer, Asst. Atty. Gen., John J. Kelly, U.S. Atty., and Raymond Hamilton, Asst. U.S. Atty., Albuquerque, NM, Stephen J. Sweeney, U.S. E.P.A., Washington, DC, with him on the brief), Dept. of Justice, Washington, DC, for defendants-appellees.
 Before SEYMOUR, Chief Judge, and MOORE and EBEL, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 The sole question presented by this appeal is whether a compliance order issued by the Environmental Protection Agency (EPA) under the Clean Water Act (CWA) is subject to judicial review. Following the lead of our sister circuits which have already considered this issue, we conclude the CWA provides no basis for such a proceeding, despite strong due process arguments advanced by the appellant. We therefore affirm the judgment of the district court.
 
 
 2
 Plaintiff Laguna Gatuna, Inc., is a New Mexico corporation whose sole business is disposing of industrial waste water. It dumps the water in a "sinkhole" known as Laguna Gatuna, to which the company has appropriate rights. Defendants are the Environmental Protection Agency and its Administrators.
 
 
 3
 In 1987, Laguna's predecessor in interest inquired of the EPA whether the sinkhole was included in "waters of the United States" as defined by 40 C.F.R. Sec. 122.2, subjecting it to EPA jurisdiction. The EPA responded by letter that it was not, based on the representation the sinkhole was "not hydrologically connected" to other waters and there were "no recreational, industrial, or other uses that could affect interstate commerce." In 1991, in the course of a study of playa lakes in New Mexico, the EPA discovered dead migratory birds near the sinkhole. In 1992, the EPA issued a compliance order to Laguna, directing it to cease dumping wastes into the sinkhole. Laguna complied with the order and discontinued operations.
 
 
 4
 Laguna filed an action for declaratory relief in district court, claiming the EPA had no jurisdiction to regulate the sinkhole because it was not "waters of the United States," and the issuance of the compliance order violated Laguna's procedural and substantive due process rights. The district court dismissed the action for lack of subject matter jurisdiction. This appeal was brought to review that dismissal.
 
 
 5
 Questions of jurisdiction are reviewed de novo. Community Action of Laramie County, Inc. v. Bowen, 866 F.2d 347, 351 n. 1 (10th Cir.1989). When deciding a question of jurisdiction, a court must construe all relevant allegations in the light most favorable to the plaintiff. See Mitchell v. King, 537 F.2d 385, 386 (10th Cir.1976). Accordingly, the facts set forth above are as alleged in the complaint. Laguna has asserted federal question jurisdiction under 28 U.S.C. Sec. 1331.
 
 
 6
 This court has not yet spoken on this precise issue. But see Child v. United States, 851 F.Supp. 1527 (D.Utah 1994); Howell v. United States Army Corps of Eng'rs, 794 F.Supp. 1072 (D.N.M.1992). We follow the authority of our sister circuits in Southern Ohio Coal Co. v. Office of Surface Mining, 20 F.3d 1418 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 316, 130 L.Ed.2d 278 (1994); Rueth v. United States EPA, 13 F.3d 227 (7th Cir.1993); and Southern Pines Assocs. v. United States, 912 F.2d 713 (4th Cir.1990). Accordingly, we affirm the dismissal for lack of jurisdiction.
 
 
 7
 In Southern Pines, the EPA issued a compliance order to cease dumping in the wetlands on its land in Chesapeake, Virginia, required Southern Pines to commence restoration, and requested further information to make a "final determination" about the wetlands. 912 F.2d at 714. Southern Pines filed a complaint for declaratory and injunctive relief, and the district court dismissed for lack of subject matter jurisdiction. Id. Based on the legislative history and language of the CWA, and analogous authority concerning the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and the Clean Air Act (CAA), the court was "persuaded that Congress meant to preclude judicial review of compliance orders under the CWA." Id. at 716. Southern Pines argued lack of review was a denial of due process, but the court rejected this argument. Id. at 717.
 
 
 8
 In Rueth, the EPA issued Rueth a compliance order to cease discharges into a wetlands area and to commence restoration of the wetlands. 13 F.3d at 228. Rueth sought an injunction in district court against enforcement of the order, and the case was dismissed for lack of jurisdiction. Id. On appeal to the Seventh Circuit, Rueth challenged the EPA's jurisdiction to regulate the wetlands, claiming, as Laguna does in the instant case, that the wetlands were not part of the "waters of the United States." Id. at 231. The Seventh Circuit nevertheless upheld the dismissal. Id.; see also Hoffman Group, Inc. v. EPA, 902 F.2d 567 (7th Cir.1990).
 
 
 9
 In Southern Ohio, the plaintiff coal company proposed to discharge "untreated and minimally treated" floodwater from a coal mine into tributaries of the Ohio River. 20 F.3d at 1420. The Office of Surface Mining, Reclamation and Enforcement of the Department of the Interior (OSM) issued a cessation order against the company. The company filed suit seeking a temporary restraining order against OSM. The cessation order was vacated, and Southern Ohio began pumping. Id. at 1421. The EPA then threatened to issue a cease and desist order if Southern Ohio did not cease pumping. Southern Ohio joined the EPA as a party and obtained a restraining order against the EPA as well. The EPA moved to vacate the order for lack of jurisdiction. Id. at 1422. The district court denied the motion.
 
 
 10
 On appeal, the Sixth Circuit joined the Fourth and Seventh Circuits in holding Congress did not intend to allow judicial review of compliance orders. Id. at 1427. It reversed, noting the "enforcement provisions of the CWA were modeled after the enforcements provisions of the Clean Air Act," and "review of the caselaw under the CAA reveals the uniform holding that judicial review of pre-enforcement orders, similar to those issued under the CWA, is not available." Id. at 1426.
 
 
 11
 Laguna argues Southern Ohio is distinguishable because it involved a different quality of waste water from that discharged into the sinkhole in the instant case. This argument goes to the merits of Laguna's dispute with the EPA, not to the federal court's jurisdiction to hear that dispute. Laguna further argues Rueth and Southern Pines are distinguishable because in the instant case the EPA is not in the process of conducting any fact-finding and has issued a final response to Laguna. However, these distinctions speak to the issue of finality, not reviewability. The EPA accurately points out that finality and reviewability are separate issues. Thunder Basin Coal Co. v. Reich, --- U.S. ----, ---- n. 23, 114 S.Ct. 771, 782 n. 23, 127 L.Ed.2d 29 (1994). A decision must be final to be reviewable, but all final decisions are not reviewable.
 
 
 12
 We consider Rueth, Southern Pines, and Southern Ohio to be indistinguishable from this case. The plaintiffs in those cases made challenges to the compliance orders similar to those brought by Laguna: that their land lay without the definition of "waters of the United States" and that the compliance order and lack of federal review violated guarantees of substantive and procedural due process. Our sister circuits held there was no jurisdiction to make such challenges, and we see no reason to disagree.
 
 
 13
 Laguna argues Riverside Irrigation Dist. v. Stipo, 658 F.2d 762 (10th Cir.1981), is binding authority for the proposition judicial review is available when "the penalties are so severe that they foreclose a testing of authority by proceeding with the work." Id. at 767. However, Laguna takes this proposition out of context. Riverside is factually distinguishable: it did not involve a compliance order; it involved denial of a nationwide permit for which there was no application procedure; and it involved the contemplated construction of a water reservoir requiring a large capital outlay. Riverside is doctrinally distinguishable: it was written before the 1987 amendment to the CWA providing for judicial review of civil penalties;[1] and like Laguna's arguments on appeal, Riverside addressed the issue of finality, not reviewability.
 
 
 14
 Laguna's policy argument that it should not be necessary to violate an EPA order and risk civil and criminal penalties to obtain judicial review is well taken. Nevertheless, following the reasoning of our sister circuits, we reject Laguna's conclusion such a situation is "constitutionally intolerable." Judicial review of every unenforced compliance order would undermine the EPA's regulatory authority.
 
 
 15
 The law in other circuits squarely precludes jurisdiction on these facts. The district court's order dismissing this case is AFFIRMED.
 
 
 
 [1]
 The Water Quality Act of 1987 added a mechanism for the assessment of administrative penalties and judicial review in federal court of any such penalties. Pub.L. No. 100-4, Title III, Sec. 314(a), 101 Stat. 48 (1987) (codified as amended at 33 U.S.C. Sec. 1319(g))