**PRYOR OIL CO., INC., Plaintiff,**

v.

**THE UNITED STATES of America, Defendant.**

**No. 3:02–CV–679.**

United States District Court, E.D. Tennessee.

Oct. 27, 2003.

Bernard E. Bernstein, Christopher S. Taylor, Bernstein, Stair & McAdams, Knoxville, TN, Beverlee J. Roper, Blackwell, Sanders, Peper, Martin LLP, Kansas City, MO, for Plaintiff.

Pamela G. Steele, Elizabeth S. Tonkin, Office of U. S. Attorney, Knoxville, TN, for Defendant.

## MEMORANDUM OPINION

PHILLIPS, District Judge.

Plaintiff, Pryor Oil Co., Inc., has requested judicial review of an administrative order, issued by the Environmental Protection Agency (EPA), pursuant to § 311(c) of the Clean Water Act, 33 U.S.C. § 1321, *et seq.* The administrative order required plaintiff to take actions in response to an initial discharge and subsequent threat of a discharge of oil to navigable waters and adjoining shorelines caused by a well blowout and oil spill and fire at the well site. The EPA has moved for judgment on the pleadings and dismissal of plaintiff's complaint on the grounds that the court lacks subject matter jurisdiction to review an administrative order prior to judicial enforcement by the EPA. Plaintiff has moved for summary judgment on its claim that the EPA has no jurisdiction over the oil well at issue. Finally, EPA has moved for summary judgment on all of plaintiff's claims on the grounds that the agency acted well within the scope of its authority, and its actions were not arbitrary, capricious, or otherwise contrary to law. For the following reasons, EPA's motion for judgment on the pleadings will be granted and this case will be dismissed.

### Background

On July 19, 2002, Pryor Oil was performing drilling operations at the Howard–White # 1 well located in the Obed Wild and Scenic River Area, situated near both Clear and White Creeks and adjacent to National Park Service land. During these operations, Pryor Oil was unable to contain subsurface pressure in the well causing a blowout and uncontrolled release of oil and natural gas. For ten hours thereafter, several thousand gallons of oil flowed to the surface from the well and then caught fire. On the morning of July 20, Pryor Oil contacted oil response contractor Boots and Coots International Well Control to extinguish the oil fire and cap the well.

EPA received notice of the blowout and fire in the evening of July 20. The EPA On Scene Coordinator (OSC) arrived that same day and began assessing the situation. At the time of the arrival of the EPA OSC, the oil had overflowed the containment ponds and run down the hillside, burning a path east toward White Creek and south toward Clear Creek, both of which creeks flowed into the Obed River. Paraffin, an oil burning by-product the consistency of axle grease, covered portions of the creeks and oil saturated the surface soils. The EPA OSC was advised by Boots and Coots that Pryor Oil was unable to provide sufficient financial assurance for the contractor to perform the necessary response actions and that the contractor would leave the site the next day. The EPA OSC issued a Notice of Federal Assumption of Response Activity, pursuant to which the EPA would then conduct all further removal activities.

On July 22, the EPA OSC, after conferring with Pryor Oil, contractor Boots and Coots, National Park Service and U.S. Fish and Wildlife Service personnel, decided that the oil should be allowed to burn to reduce the environmental impact and the potential for explosion during the well-capping activities. On July 25 and 26, Boots and Coots extinguished the fire and capped the well. During the last week of

July and the first days of August, the EPA OSC supervised the continuing oil containment activities, removing oil contaminated soil from the well area, constructing erosion barriers to contain silt and dirt from eroding and entering the creeks, and the removal of paraffin from White Creek.

On August 5, EPA issued an administrative removal order to Pryor Oil requiring certain stabilization, mitigation and removal actions including the performance of a Mechanical Integrity Test (MIT) on the well to ensure its integrity. The order also required Pryor Oil to submit weekly written progress reports. The initial order was followed by eleven amendments over a period of eight months in response to the evolving situation as work progressed pursuant to the order.

On November 13, 2002, EPA issued Amendment # 6 to the administrative removal order which directed Pryor Oil to conduct certain activities in preparation for and performance of the MIT by a certain date. EPA representatives advised Pryor Oil that if it failed to timely complete the tasks and the MIT, "EPA may, at its sole discretion, respond to the continued discharge or threat of discharge from [the well], by assessing well integrity or plugging and abandoning the Howard White # 1 well."

Thereafter, on November 27, 2002, Pryor Oil filed the instant complaint, seeking, *inter alia,* temporary and permanent injunctive relief. On December 3, EPA entered into an agreement with Pryor Oil which resolved the request for temporary injunctive relief by granting an additional period of time for completion of the previously ordered tasks and the MIT. Again, on December 13, EPA issued Amendment # 7 which extended further the time for completion of the required tasks. After considering new information, including current conditions at the well, EPA amended its order four additional times, Amendments # 8–10, extending deadlines for certain work to be performed.

On May 7, 2003, EPA issued Amendment # 11 which eliminated the requirement for the MIT and directed Pryor Oil to notify EPA at least 30 days prior to drilling the well to a depth greater than its current depth. The administrative removal order was not amended further. EPA has continued to monitor conditions at the well site.

### *Standard of Review*

The standard for ruling on a motion for judgment on the pleadings under Rule 12(c), Federal Rules of Civil Procedure, is the same as that for ruling on a motion to dismiss. *Mixon v. State of Ohio,* 193 F.3d 389, 399–400 (6th Cir.1999). A complaint may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) or when it does not state a claim upon which relief may be granted under Rule 12(b)(6). Fed.R.Civ.P. 12(b).

When a defendant challenges subject matter jurisdiction in a motion to dismiss under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990); *see also Nichols v. Muskingum College,* 318 F.3d 674, 677 (6th Cir.2003); *Madison–Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996). If the plaintiff fails to meet such burden, the motion to dismiss must be granted. *Moir,* 895 F.2d at 269; *Madison–Hughes,* 80 F.3d at 1130. Moreover, on the question of subject matter jurisdiction the court is not limited to jurisdictional allegations of the complaint but may properly consider whatever evidence is submitted for the limited purpose of ascertaining whether subject matter jurisdiction exists. *See Rogers v. Stratton Industries,*

*Inc.,* 798 F.2d 913, 915–16 (6th Cir.1986); *Cooley v. United States,* 791 F.Supp. 1294 (E.D.Tenn.1992), *aff'd on other grounds sub nom. Myers v. United States,* 17 F.3d 890 (6th Cir.1994). Accordingly, this court may properly consider the filed certified copy of the EPA administrative record in connection with its consideration of the subject motion for judgment on the pleadings.

### Analysis

■ Congress authorized the EPA to issue administrative removal orders pursuant to the Clean Water Act (CWA), 33 U.S.C. § 1321(c). The Sixth Circuit concluded in *Southern Ohio Coal Co. v. Office of Surface Mining,* 20 F.3d 1418 (6th Cir. 1994), that pre-enforcement review of administrative orders is precluded under the CWA. In *Southern Ohio Coal,* the plaintiff sought to enjoin EPA from taking enforcement action under the CWA with respect to the flooding of an Ohio coal mine. The district court granted the requested injunction. The Sixth Circuit reversed, holding that "district courts are without jurisdiction to review pre-enforcement compliance orders issued under the CWA." 20 F.3d at 1427. Rather, "Congress provided one forum in which to address all issues, including constitutional challenges, raised by the issuance of a compliance order: an enforcement proceeding." *Id.* at 1426.

The Sixth Circuit rejected the plaintiffs' argument "that they are not challenging pre-enforcement action, but instead are challenging the authority of [EPA] to act at all under the circumstances of this case." *Id.* at 1427. The court was

> unpersuaded ... that a jurisdictional challenge to the agency's issuance of an order is distinguishable from challenges to the order itself, which, as we have just held, can only be had in an enforce-

ment proceeding. Both challenges interfere with [EPA]'s ability to quickly respond to environmental problems and both may be dealt with in an enforcement action.

*Id.*

Pryor Oil argues that this case involves § 309 of the CWA, rather than § 311. Section 309 sets out EPA's general enforcement authority under the CWA, whereas § 311 specifically applies to oil and hazardous substance liability. Contrary to Pryor Oil's assertion, §§ 309 and 311 are complementary and overlapping authorities, and are not mutually exclusive. Pryor Oil argues that because Congress omitted any reference to a judicial review bar in the Oil Pollution Act in 1990, which was enacted four years after Congress had passed an explicit bar on pre-enforcement review of federal hazardous waste cleanups in the Superfund Amendments and Reauthorization Act, it necessarily follows that the Oil Pollution Act and § 311 of the CWA were not intended to preclude pre-enforcement review. These contentions are meritless.

The Sixth Circuit's decision in *Southern Ohio Coal* is binding in the instant case and is dispositive of this court's jurisdiction to review Pryor Oil's challenge to the administrative removal order. Three other courts of appeals and numerous district courts have similarly held that the Clean Water Act precludes judicial review of administrative orders. *See Laguna Gatuna, Inc. v. Browner,* 58 F.3d 564, 566 (10th Cir.1995) ("Judicial review of every unenforced compliance order would undermine the EPA's regulatory authority."); *Rueth v. EPA,* 13 F.3d 227, 231 (7th Cir.1993) ("The Clean Water Act provides for judicial review only when the agency is seeking judicial enforcement of a compliance order or the agency is seeking administrative penalties."); *Southern Pines Assocs.*

*v. United States,* 912 F.2d 713, 715 (4th Cir.1990) ("'The language, structure, objectives, and history of the CWA, persuade us that Congress intended to preclude judicial review.'"); *Hoffman Group, Inc. v. EPA,* 902 F.2d 567, 569 (7th Cir.1990) ("Having provided a detailed mechanism for judicial consideration of a compliance order via an enforcement proceeding, Congress has impliedly precluded judicial review of a compliance order except in an enforcement proceeding."); *Board of Managers v. Bornhoft,* 812 F.Supp. 1012, 1014 (D.N.D. 1993) *aff'd sub nom* without opinion, *Bottineau Co. Water Resource Dist. Bd. of Managers v. Niedfelt,* 48 F.3d 1223, 1995 WL 91871 (8th Cir.1995); *Howell v. U.S. Army Corps of Engineers,* 794 F.Supp. 1072, 1074 (D.N.M.1992); *Leslie Salt Co. v. United States,* 789 F.Supp. 1030, 1033–34 (N.D.Cal.1991); *Mulberry Hills Dev. Co. v. Army Corps of Engineers,* 772 F.Supp. 1553, 1557–58 (D.Md.1991); *McGown v. United States,* 747 F.Supp. 539, 541–42 (E.D.Mo.1990); *Fiscella & Fiscella v. United States,* 717 F.Supp. 1143, 1147 (E.D.Va.1989). Accordingly, based upon the Sixth Circuit's ruling in *Southern Ohio Coal,* this court finds that it lacks jurisdiction to review plaintiff's challenge to EPA's removal administrative order issued pursuant to 33 U.S.C. § 1321(c).

■■ In the complaint, Pryor Oil also seeks a declaration that EPA has violated the Takings and Due Process Clauses of the Fifth Amendment and seeks injunctive relief from the actions which constituted such violations. While the Takings Clause of the Fifth Amendment does provide that "private property [shall not] be taken for public use, without just compensation," it does not forbid governmental interference with private property rights. U.S. Const. Amend. V; *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 314–15, 107 S.Ct. 2378,

96 L.Ed.2d 250 (1987); *Gordon v. Norton,* 322 F.3d 1213, 1216 (10th Cir.2003). Because "the Takings Clause is understood only to require compensation for governmental interference amounting to a taking, 'equitable relief is not available to enjoin a lawful taking when a property owner can subsequently sue the government for compensation.'" *Gordon,* 322 F.3d at 1216 (citing *First English,* 482 U.S. at 314–15, 107 S.Ct. 2378; and *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1016, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)); *see also Southern Ohio,* 20 F.3d at 1425 ("If [plaintiff] made a claim under the Takings Clause of the Fifth Amendment and if the immediate [administrative] order 'gives rise to a taking, compensation is available to [plaintiff] under the Tucker Act, 28 U.S.C. § 1491(a)(1), and the requirements of the Fifth Amendment are satisfied.'")

■ Because Pryor Oil has a remedy under the Takings Clause for compensation for any taking arising from the actions of the EPA, Pryor Oil is precluded from seeking equitable remedies such as an injunction or declaratory relief. Moreover, jurisdiction for any claim against the United States founded upon the Constitution lies solely with the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491. *See Preseault v. Interstate Commerce Comm.,* 494 U.S. 1, 11–12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). Accordingly, this court does not have subject matter jurisdiction over Pryor Oil's claim for violations of the Fifth Amendment of the Constitution.

■ As to any tort claims alleged by Pryor Oil against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* plaintiff has not shown that it has submitted an administrative claim, as required by the Act. This requirement of exhaustion of administrative remedies is a jurisdictional prerequisite to the filing of an action under the Act.

*McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Joelson v. United States,* 86 F.3d 1413, 1422 (6th Cir.1996); *Lundstrum v. Lyng,* 954 F.2d 1142, 1145 (6th Cir.1991); *Garrett v. United States,* 640 F.2d 24, 26 (6th Cir.1981). Because Pryor Oil has not filed such a claim and exhausted the requisite administrative remedies, this court lacks jurisdiction over any claim of plaintiff arising from any alleged wrongful acts of EPA or its employees.

### Conclusion

For the reasons stated above, the court finds that defendants are entitled to judgment on all of plaintiffs' claims. Accordingly, defendant's motion for judgment on the pleadings [Doc. 31] will be granted and this action will be dismissed. Plaintiff's motion for summary judgment [Doc. 29], defendant's motion to exclude Rule 26 disclosures and discovery from the scheduling order [Doc. 21], and defendant's motion for summary judgment [Doc. 38] will be denied as moot.

### *JUDGMENT ORDER*

For the reasons set forth in the memorandum opinion filed this day with the clerk, the motion for judgment on the pleadings filed by defendant [Doc. 31] is **GRANTED**, and this action is **DISMISSED**. Plaintiff's motion for summary judgment [Doc. 29], defendant's motion to exclude Rule 26 disclosures and discovery from the scheduling order [Doc. 21], and defendant's motion for summary judgment [Doc. 38] are **DENIED AS MOOT**. The final pretrial conference scheduled for November 25, 2003, and the trial scheduled for December 4, 2003 are **CANCELLED**.

**IT IS SO ORDERED.**