CITY NATIONAL BANK, First Union National Bank of North Carolina, North Carolina National Bank, Southern National Bank of North Carolina, Wachovia Bank and Trust Company, N.A., First-Citizens Bank and Trust Company and Peoples Bank and Trust Company, Appellees,

v.

Rufus L. EDMISTEN, Atty. Gen. of the State of North Carolina, Appellant.

No. 81–2157.

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1982.

Decided June 30, 1982.

Hirsch, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen., Millard R. Rich, Jr., Deputy Atty. Gen., Raleigh, N. C., on brief), for appellant.

John R. Jordan, Jr., Raleigh, N. C. (Robert R. Price, R. Frank Gray, E. Burke Haywood, Jordon, Brown, Price & Wall, Raleigh, N. C., on brief), for appellees.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and DOUMAR,[*] District Judge.

HARRISON L. WINTER, Chief Judge:

Plaintiffs, five national banks and two state-chartered federally insured banks, sought a declaratory judgment from the district court that an annual "membership fee" which they propose to charge holders of bank credit cards would not violate North Carolina's usury laws if added to the interest currently charged on credit card accounts. On cross motions for summary judgment, the district court granted a declaratory judgment as sought by plaintiffs. Defendant appeals the judgment on the merits, raising, among other issues, the question of jurisdiction. We conclude that the judgment must be vacated and the case dismissed for lack of federal jurisdiction.

## I.

Presently, plaintiffs offer a credit card service whereby the banks, pursuant to a written agreement, will pay for purchases from authorized merchants and advance cash up to the amount of a specified "line of credit." The cardholder agrees to repay the bank on a monthly basis. The cardholder has the option of paying the outstanding account in full within twenty-five days of the billing date, in which case no interest is charged on the account. Alternatively, the cardholder may pay only a portion of the monthly account, and in that event interest accrues on the remaining balance. Currently, the charge on the unpaid monthly balance is one and one-half percent (1½%) per

James C. Gulick, Asst. Atty. Gen., John F. Maddrey, Associate Atty. Gen., Alan S.

[*] Honorable Robert G. Doumar, United States District Judge for the Eastern District of Virginia, sitting by designation.

month or 18% annually, the maximum amount allowed by state law.[1]

Plaintiffs propose to alter their current credit card service by charging each cardholder an annual fee which, as a condition to the credit card agreement, would be imposed regardless of whether the credit card was used to obtain cash or for purchasing goods. Plaintiffs notified the Attorney General of North Carolina of their intention to charge the annual fee in addition to the 18% interest charge on outstanding accounts, and requested an assurance that, in the Attorney General's opinion, the combined charges would not violate North Carolina's usury laws.

The Attorney General advised plaintiffs that in his opinion the annual fee would be considered a "service charge" within the meaning of N.C.Gen.Stat. § 24–11(a). Under this view, the proposed revision to plaintiffs' credit card service would require them to reduce the interest rate on unpaid balances because § 24–11(a) authorizes an 18% interest charge only if "no service charge ... [is] imposed upon the consumer or debtor if the account is paid in full within 25 days from the billing date." Ac-

cordingly, the Attorney General later advised plaintiffs that if they proceeded to charge 18% interest in addition to an annual fee, the interest rate would be unauthorized and legal proceedings under state law would be instituted against plaintiffs for violating North Carolina's usury statute.[2]

Plaintiffs then filed this action in the district court, seeking a declaratory judgment that an annual membership fee does not constitute a "service charge," finance charge, or interest within the meaning of North Carolina law.[3]

## II.

Plaintiffs allege that this case arises under 12 U.S.C. §§ 85 and 86, and that federal jurisdiction exists by virtue of 28 U.S.C. §§ 1331(a) and 1337(a). Section 1331 provides for jurisdiction over actions "arising under" laws of the United States, and § 1337(a) for cases "arising under" an Act of Congress regulating commerce. The sections of the National Bank Act relating to the interest chargeable by national banks, 12 U.S.C. §§ 85 and 86, are statutes regulating commerce,[4] so that jurisdiction lies

1. N.C.Gen.Stat. § 24–1 provides that the legal rate of interest shall be no more than 8% annually. But § 24–11(a) sets forth an exception to the 8% limit which, it is agreed by the parties, applies to plaintiffs' existing credit card service. Section 24–11(a) provides:

On the extension of credit under an open-end credit or similar plan (including revolving credit card plans ...) under which no service charge shall be imposed upon the consumer or debtor if the account is paid in full within 25 days from the billing date, there may be charged and collected interest, finance charges or other fees at a rate in the aggregate not to exceed one and one half percent (1½) per month computed on the unpaid balance of the previous month or the average daily balance outstanding during the billing period.

2. These undisputed facts show the existence of a "case or controversy" which is justiciable under the Declaratory Judgment Act, 28 U.S.C. § 2201. See Ellis v. Dyson, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 214 (1975). The Article III, § 2 "case or controversy" prerequisite to federal jurisdiction to issue a declaratory judgment is met if the facts show a real and substantial controversy between the parties having adverse legal interests. Maryland Casualty Co.

v. Pacific Coal & Iron Co., 312 U.S. 270, 272–273, 61 S.Ct. 510, 511–12, 85 L.Ed. 826 (1941). This dispute over the construction of N.C.Gen. Stat. § 24–11(a) presents a substantial controversy between the parties of adverse legal interest, and the Attorney General's threat to institute action against plaintiffs in the event that plaintiffs proceed according to their interpretation of § 24–11(a) renders the controversy sufficiently real and immediate to warrant the issuance of a declaratory judgment. Septum, Inc. v. Keller, 614 F.2d 456, 459 (5 Cir.), cert. denied, 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980) (when plaintiff alleges an intent to engage in conduct and there is a credible threat of prosecution for that conduct, a justiciable controversy exists).

3. In the original complaint, plaintiffs also sought to enjoin the Attorney General from taking legal action against plaintiffs for imposing an annual membership fee. But in an amended complaint the request for an injunction was withdrawn.

4. Burns v. American National Bank and Trust Company, 479 F.2d 26, 29 (8 Cir. 1973), cert. denied, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977).

under both §§ 1331 and 1337 if, but only if, this case arises under §§ 85 and 86.[5]

■ A suit "arises under" federal law if federal law creates the cause of action. *American Well Works Co. v. Wayne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). However, a state-created cause of action may also arise under federal law if the resolution of the dispute depends upon the validity, construction, or effect of federal law, so long as the federal question is a real and substantial issue, *Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912), and its resolution is an essential element of plaintiff's case. *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

■ The federal question must be an essential element of plaintiff's complaint; the anticipation of a defense which arises under federal law does not establish federal jurisdiction. *Louisville & Nashville Rd. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Accordingly, in an action for a declaratory judgment, if the plaintiff is seeking a declaration that it has a good defense to a threatened action, it is the character of the threatened action and not of the defense which determines whether there is federal question jurisdiction. *See Public Service Commission v. Wycoff*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952).

■ According to these principles, this case does not arise under either § 85 or § 86 of the National Bank Act.[6] Section 85 limits the amount of interest which can lawfully be charged by a national bank to the interest allowed by the state wherein the bank is located. Pursuant to § 85, a national bank has the right to charge the maximum rate of interest permitted by state law to a competing state-chartered institution. *United Missouri Bank of Kansas City v. Danforth*, 394 F.Supp. 774, 777 (W.D.Mo.1975); 12 C.F.R. 87.7310(a) (1981). Plaintiffs are correct in asserting that this right is embodied in federal law. But this right is not at issue in the case. The disputed issue is simply and solely which state law applies to plaintiffs' credit card program if that program includes an annual users' fee. However this dispute is resolved, plaintiffs will be allowed to charge the maximum rate of interest allowed by state law. Therefore, this is not a case in which the assertion of the federal right created by § 85 supports federal jurisdiction.

Nor is this a case in which the construction or effect of § 85 is in dispute.[7] The only connection between this case and § 85 is the fact that § 85 incorporates state law in the regulation of the interest chargeable by a national bank. But a federal statute is not a sufficient basis for federal question jurisdiction simply because it incorporates state law. *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 508, 20 S.Ct. 726, 727, 44 L.Ed. 864 (1900); *Standage Ventures, Inc. v. State of Arizona*, 499 F.2d 248, 250 (9 Cir. 1974).

Section 86 of the National Bank Act is the penalty provision for usury, i.e., "taking, receiving, or charging a rate of interest greater than is allowed [by § 85]." When a person seeks to enforce § 86 by recovering

---

5. Jurisdiction was not contested below but, of course, the parties cannot consent to federal subject matter jurisdiction, *California v. La Rue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 390 (1972), and whenever it appears that the federal courts lack jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(h).

6. The only other federal law which is relevant to this case is the Declaratory Judgment Act, 28 U.S.C. § 2201. But it is clear that § 2201 is remedial only, and is not itself a basis for federal subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 73 S.Ct. 876, 94 L.Ed. 1194 (1950).

7. *Compare Marquette National Bank v. First of Omaha Corp.*, 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978), in which the question was whether a national bank situated in Nebraska must charge the interest rates set by Minnesota on loans obtained by residents of Minnesota. The resolution of the dispute depended upon the construction of § 85 which provides that a national bank must charge the rate of interest allowed by the state "where the bank is located."

the penalty provided therein, the case arises under § 86, and thus arises under federal law. *Burns v. American National Bank and Trust Co.*, 479 F.2d at 29. If the Attorney General of North Carolina had threatened action under § 86 in the event that plaintiffs charged an annual fee in addition to 18% interest, this declaratory judgment action would take its character from the threatened action and would arise under federal law.

But the Attorney General has threatened to charge plaintiffs with a violation of state usury laws, not a violation of § 86. Plaintiffs could defend an action under state usury law on the ground that § 86 provides the exclusive remedy for usury against a national bank,[8] but the availability of this defense does not convert the threatened action from a state to a federal one for purposes of determining federal jurisdiction. *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 253–254 (7 Cir. 1981). Therefore, § 86 is connected with this case, if at all, only as a defense to a threatened state action and does not provide a basis for federal jurisdiction.

In sum, this controversy does not arise under federal law. The only issue concerns the construction of North Carolina law. But the parties are not diverse, and diversity jurisdiction is absent. Since no other jurisdictional basis applies, the case must be dismissed for lack of federal jurisdiction. We vacate the judgment of the district court and remand the case with directions to dismiss it for want of federal jurisdiction.

VACATED AND REMANDED.

---

8. *See Stephens v. Monongahela National Bank,* 111 U.S. 197, 4 S.Ct. 336, 28 L.Ed. 399 (1884).