ALUMINUM COMPANY OF AMERICA, a Pennsylvania Corporation, and Tapoco, Inc., a Tennessee Corporation, Appellants,

v.

UTILITIES COMMISSION OF the STATE OF NORTH CAROLINA; Robert K. Koger, Leigh M. Hammond, Sarah Lindsay Tate, John W. Winter, Edward B. Hipp, A. Hartwell Campbell, and Douglas O. Leary, in their respective official capacities as Chairman and Commissioners of the North Carolina Utilities Commission, Appellees,

Rufus L. Edmisten, Attorney General of North Carolina, Amicus Curiae,

United Steelworkers of America, AFL–CIO, and Local Union 309, Amicus Curiae.

STATE OF TENNESSEE, Tennessee Office of Economic and Community Development, Appellants,

and

Aluminum Company of America, a Pennsylvania Corporation, and Tapoco, Inc., a Tennessee Corporation, Plaintiffs,

v.

UTILITIES COMMISSION OF STATE OF NORTH CAROLINA, Robert L. Koger, Leigh M. Hammond, Sarah Lindsay Tate, John W. Winter, Edward B. Hipp, A. Hartwell Campbell and Douglas O. Leary, in their respective official capacities as Chairman and Commissioners of the North Carolina Utilities Commission, Appellees,

Rufus L. Edmisten, Attorney General of North Carolina, Amicus Curiae,

United Steelworkers of America, AFL–CIO, and Local Union 309, Amicus Curiae.

Nos. 82–1733(L), 82–1765.

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1983.

Decided July 28, 1983.

Rehearing and Rehearing En Banc Denied Sept. 21, 1983.

See also D.C., 548 F.Supp. 18.

Grant S. Lewis, New York City (Ronald D. Jones, David R. Pope, John S. Kinzey, LeBoeuf, Lamb, Leiby & MacRae, New York City, on brief), Charles L. Lewis, Asst. Atty. Gen., Nashville, Tenn. (William M. Leech, Jr., Atty. Gen., William B. Hubbard, Chief Deputy Atty. Gen., Nashville, Tenn., I. Edward Johnson, Raleigh, N.C., Richard L. Holz, Asst. Gen. Counsel, Pittsburgh, Pa., on brief), for appellants.

Jerry W. Amos and Reid L. Phillips, Greensboro, N.C. (Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., on brief), for appellees; (Cooper, Mitch & Crawford, Birmingham, Ala., Jonathan R. Harkavy, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., Carl B. Frankel, United Steelworkers of America, AFL–CIO, Pittsburgh, Pa., on brief), as amicus curiae United Steelworkers of America, AFL–CIO; (William T. Crisp, Robert F. Page, Crisp, Davis, Schwentker & Page; Rufus L. Edmisten, Atty. Gen., Richard L. Griffin, Asst. Atty. Gen., Raleigh, N.C., on brief), as amicus curiae Rufus L. Edmisten.

Before MURNAGHAN and ERVIN, Circuit Judges, and KELLAM, District Judge.*

ERVIN, Circuit Judge:

■ The Aluminum Company of America ("Alcoa") and its wholly owned subsidiary, Tapoco, Inc. ("Tapoco") appeal from the United States District Court for the Eastern District of North Carolina wherein their action against the Utilities Commission of the State of North Carolina ("NCUC") was dismissed on abstention grounds. Alcoa and Tapoco brought this action seeking to enjoin the enforcement of an NCUC order which allegedly interferes with the operation of a preemptive federal regulatory scheme and impermissibly burdens interstate commerce. Because we conclude that abstention was appropriate under *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), we affirm.[1]

---

* Honorable Richard B. Kellam, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. Our decision on the abstention issue—to affirm the dismissal—effectively moots the other appeal now before us, that of the United Steel Workers of America, the collective bargaining union for some 3,500 employees at Alcoa's Tennessee plant, and the State of Tennessee Office of Economic and Community Development. Those parties appeal the district court's denial of their motion to intervene under Fed.R.Civ. Proc. 24. We nevertheless note that our review indicates that the interests of the existing plaintiffs and the movants coincide and that the plaintiffs adequately have represented those interests. Thus, the district court did not abuse its discretion in denying the motion to intervene. *See Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214 (4th Cir.1976) (intervention by Virginia denied in

## I.

Alcoa operates a large aluminum smelting plant in eastern Tennessee and wholly owns two nearby electric utility companies, Tapoco and Nantahala Power and Light Company ("Nantahala"). Nantahala is incorporated in North Carolina and owns 11 hydroelectric plants in that state. Nantahala provides retail electric service in six counties in western North Carolina. NCUC regulates Nantahala's retail rates. Tapoco is a Tennessee corporation which owns four hydroelectric power plants, two in North Carolina and two in Tennessee. Tapoco provides electricity exclusively to Alcoa's smelting plant, which requires an enormous amount of energy.

The Tapoco and Nantahala dams are on streams which are a part of the larger Tennessee River watershed which has been developed for hydroelectric power production by the Tennessee Valley Authority ("TVA"). In 1941, Alcoa and TVA entered into an agreement, the "Fontana Agreement," whereby TVA was given the right to operate Tapoco's and Nantahala's dams. The agreement provided that the electricity generated at those dams would be transferred to TVA and that TVA would transfer back to Alcoa an equal amount of electricity at specified times and amounts. This agreement was superseded in 1963 by the "New Fontana Agreement," effective through December 31, 1982, under which TVA continued to operate the dams, but returned to Alcoa a fixed entitlement of electricity regardless of the amount generated at the Alcoa dams. A supplemental agreement between Alcoa, Nantahala, and Tapoco apportioned the TVA fixed entitlement between Tapoco and Nantahala. Under that supplemental agreement, Nantahala received electricity at the favorable entitlement prices in an amount equal to the greater of Nantahala's actual production or the theoretical minimum production of the Nantahala system. If Nantahala needed more electricity than its TVA entitlement, Nantahala had to purchase that additional electricity from the TVA at a price substantially higher than the entitlement price.

In 1971, Nantahala and Tapoco entered into a new apportionment agreement, reducing Nantahala's TVA entitlement to an amount equal to Nantahala's theoretical minimum potential generation, regardless of actual production. The remainder of the entitlement goes to Tapoco for transfer to Alcoa's plant. Thus, under the 1971 agreement, Nantahala received less electricity from TVA at the lower entitlement price, increasing the cost to Nantahala's North Carolina retail customers, and Tapoco received more electricity from TVA at the lower entitlement price, decreasing the cost to Alcoa's plant.

In 1976, Nantahala applied to the NCUC for an increase in the rates it charges its retail customers. The NCUC permitted certain ratepayers along with the North Carolina Attorney General to intervene in the proceedings. The intervenors contended that the relationships between Nantahala, Tapoco, and Alcoa were unfair to Nantahala and its customers. In order to rectify the inequity, the intervenors recommended that the NCUC apply the "roll-in" method of rate making, that is, the NCUC should consider Tapoco and Nantahala as a single system for purposes of calculating Nantahala's rate base. The NCUC rejected the intervenors' contention of unfairness and did not consider the roll-in method.

On appeal by the intervenors, the North Carolina Court of Appeals and the North Carolina Supreme Court agreed with the intervenors and directed the NCUC to consider using a roll-in method. *See Utilities Comm'n v. Edmisten,* 40 N.C.App. 109, 252 S.E.2d 516, aff'd, 299 N.C. 432, 263 S.E.2d 583 (1980).

On remand, Alcoa and Tapoco were made parties to the proceedings, the NCUC heard additional evidence, and adopted the roll-in method. In so doing, the NCUC found that Nantahala and Tapoco constituted a single system, calculated the fair value of the entire system, and determined what portion of that total system is devoted to North Carolina intrastate retail service. Rates were based on the cost of service calculated

suit brought by utility against supplier of nuclear fuel).

from that apportionment. On September 2, 1981, the NCUC entered an order reducing Nantahala's rates and requiring Nantahala to pay $18,962,000 in refunds to its customers for the earlier years' overpayments. The NCUC joined Alcoa and Tapoco to the refund order because the NCUC concluded that "Nantahala is financially unable to make all the refunds required."

Nantahala, Tapoco, and Alcoa petitioned the NCUC to reconsider its September 2 order. On January 28, 1981, the NCUC issued an affirmance of the September 2 order. The NCUC orders then were appealed to the North Carolina Court of Appeals. Nantahala, Alcoa, and Tapoco have submitted their appellate briefs to that court, raising therein, among other issues, the federal issues argued in this action.

Contemporaneously with the NCUC proceedings, the Federal Energy Regulatory Commission ("FERC") was holding proceedings on the New Fontana and 1971 apportionment agreements. Under the Federal Power Act, 16 U.S.C. §§ 791a, *et seq.*, the FERC oversees the licensing of the Nantahala and Tapoco plants, their sale of electricity in interstate commerce, and their wholesale of electricity. In 1976, Nantahala applied to FERC for an increase in wholesale rates, and in response, two wholesale customers and the North Carolina Attorney General intervened, charging that Alcoa, Nantahala, and Tapoco "are in violation of the Federal Power Act by diverting for the benefit and private use of Alcoa, hydroelectric power and facilities." FERC declined to apply the roll-in method of rate making, but did find that "the alleged fairness of the 1971 apportionment agreement is not supported by the record" and modified that agreement "to provide [TVA] entitlements to Nantahala which will result in just and reasonable rates to its wholesale customers." Nantahala has appealed the FERC decision to this court. *Nantahala Power & Light Co. v. F.E.R.C.*, No. 82–1872.

On January 26, 1982, two days prior to the NCUC affirmance of its September 2 order, Alcoa and Tapoco filed this action in the United States District Court for the Eastern District of Tennessee. By order dated April 12, 1982, the action was transferred to the Eastern District of North Carolina. On July 29, 1982, the district court dismissed the action. The district court rejected NCUC's arguments for dismissal for lack of jurisdiction, but granted the dismissal on abstention grounds. This appeal followed.

II.

We are now confronted with two questions. First, did the district court possess jurisdiction? Second, if so, did the district court properly abstain from the exercise of that jurisdiction? We answer both questions in the affirmative.

A.

The NCUC puts forth three arguments in support of the claim that the district court lacked jurisdiction: (1) the Johnson Act, 28 U.S.C. § 1342, prohibits the district court's exercise of its injunctive power against the NCUC; (2) the action is barred by the eleventh amendment; and (3) the alleged federal questions are merely defenses to be raised in the pending state action and therefore cannot form the basis of federal question jurisdiction. Those arguments are without merit.

■ Under the Johnson Act, 28 U.S.C. § 1342, Congress placed statutory limitations on the circumstances in which a federal court could issue injunctions against state orders setting rates for public utilities. The Johnson Act provides:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
>
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and
>
> (2) The order does not interfere with interstate commerce; and
>
> (3) The order has been made after reasonable notice and hearing; and

(4) A plain, speedy and efficient remedy may be had in the court of such State. The limitation applies only when all four conditions are met. Since the first two conditions are not satisfied here, the Johnson Act does not apply. Alcoa and Tapoco have based jurisdiction upon federal questions, preemption and impermissible interference with interstate commerce. Thus, jurisdiction is not based "solely on diversity ... or repugnance ... to the federal constitution." *See Int'l Brotherhood of Elec. Workers v. Public Service Comm'n of Nevada,* 614 F.2d 206, 210–11 (9th Cir.1980). Moreover, the allegation that the NCUC order impermissibly interferes with interstate commerce, if proven, would defeat the second condition of the Johnson Act.

The eleventh amendment provides that federal jurisdiction does not extend to a suit against a state by a citizen of another state. In *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1968), the Court held that the eleventh amendment did not prevent a suit to enjoin state officials from enforcing a state rate regulation found to be in violation of the federal constitution. That is precisely the type of injunctive relief that Alcoa and Tapoco seek. *See also Kimble v. Solomon,* 599 F.2d 599, 603 (4th Cir.), cert. denied, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979).

▮ Alleged federal questions that are, in fact, merely defenses to be raised in the pending state action cannot form the basis of federal question jurisdiction. *Public Service Comm'n of Utah v. Wycoff,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *City National Bank v. Edmisten,* 681 F.2d 942 (4th Cir.1982). In *City National Bank,* this court stated:

> The federal question must be an essential element of plaintiff's complaint; *the anticipation of a defense* which arises under federal law does not establish federal jurisdiction. *Louisville & Nashville Rd. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Accordingly, in an action for a declaratory judgment, *if the plaintiff is seeking a declaration that it has a good defense to a threatened action,* it is the character of the threatened action and not of the defense which deter-

mines whether there is federal question jurisdiction. See *Public Service Commission v. Wycoff,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952).

*Id.* at 945 (emphasis added). In that case, five banks sought a declaratory judgment that a credit card fee would not constitute interest under North Carolina law because such an interpretation of the state law would cause a conflict with the National Bank Act, 12 U.S.C. §§ 85, 86. The banks claimed that the North Carolina Attorney General had threatened to sue them if they charged the fee. This court ordered the action dismissed, holding that the threatened action would have to be brought, if at all, under North Carolina law and was not converted into a federal action simply by the availability of a federal defense.

▮ The obvious distinction between *City National Bank* and the present case is that the latter is not a declaratory judgment action involving "the anticipation of a defense" or "a declaration that it has a good defense to a threatened action." Rather, plaintiffs seek to enjoin an already-issued NCUC order. The federal courts, of course, often entertain suits to enjoin the enforcement of state orders which are alleged to have been preempted by federal statutes or to burden unduly interstate commerce. *See, e.g., Public Utilities Commission of Ohio v. United Fuel Gas Company,* 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943); *Kennecott Corp. v. Smith,* 637 F.2d 181 (3d Cir.1980).

### B.

In *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the court held that abstention was proper in a challenge to a Texas state commission's oil field proration order. The Court reasoned:

> These questions of regulation of the industry by the State administrative agency ... so clearly involve basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them.... The state provides a unified method for the formation of policy and

determination of cases by the Commission and by the state courts. The judicial review of the Commission's decision in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal question is fully preserved here.... Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.

*Id.* at 332–34, 63 S.Ct. at 1106–07 (citations omitted). *See also Alabama Public Service Comm'n v. Southern R. Co.,* 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002 (1951) (abstention required in challenge to state railroad commission order; "As adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights").

The NCUC order establishes retail, intrastate rates for North Carolina customers. The setting of those rates involved important and basic considerations of state policy

and was accomplished in accordance with the uniform statutory procedures for the formation of that policy. *See* N.C.G.S. § 62–130, *et seq.* The NCUC order now is on appeal [2] to the North Carolina Court of Appeals and Alcoa, Nantahala, and Tapoco have raised therein, along with certain state law issues,[3] the same federal issues that they are asking the federal courts to consider. We therefore believe that the present case involves the quintessential *Burford* setting of a complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded. The usual rule of comity must govern; the district court properly exercised its discretionary power to withhold relief so as to avoid needless obstruction of North Carolina's domestic policy.

Alcoa's primary argument against abstention is that abstention is never appropriate where the federal plaintiff asserts a preemption claim. *See Int'l Brotherhood of Electrical Workers v. Public Service Comm'n of Nevada,* 614 F.2d 206, 212 n. 1 (9th Cir.1980). We decline to adopt such a *per se* rule.[4] The presence of a preemption claim, however, may in some cases require a refusal to abstain. Such a preemption

---

2. Not only are state proceedings pending, but the challenged NCUC order was reached after a specific remand by the North Carolina Supreme Court. While we need not decide whether abstention is appropriate here under the "Our Federalism" doctrine, *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *see generally* C. Wright, *Federal Courts* § 52A (3d ed.), it is worth noting the admonition in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975), that federal courts should avoid intervention where state proceedings have reached an advanced stage:

> Intervention at the later stage is if anything more highly duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts. Nor ... is federal intervention at the appellate stage any the less a disruption of the State's efforts to protect interests which it deems important.

3. Although the parties do not address the issue, *Pullman* abstention, *see Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct.

643, 85 L.Ed. 971 (1941), also may be called for here. *Pullman* abstention allows the federal courts to stay, not dismiss, the action until the state courts in the state proceedings resolve unsettled questions of state law that may make it unnecessary to decide a federal constitutional question. An unsettled question of state law here is whether the NCUC order can bind Alcoa and Tapoco to pay the refund due from Nantahala. If the North Carolina courts decide that the NCUC has no authority to bind Alcoa and Tapoco, then those companies, the plaintiffs herein (Nantahala is not a plaintiff), will have no cause of action in the federal courts; resolution of a pending state law question thus may make it unnecessary to resolve the federal constitutional question.

4. Two other circuit courts have refused to exercise their jurisdiction despite claims of federal preemption. *See Allegheny Airlines, Inc. v. Penn. Pub. Util. Comm'n,* 465 F.2d 237 (3d Cir.), *cert. denied,* 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973); *California v. Oroville-Wyandotte Irr. Dist.,* 409 F.2d 532 (9th Cir. 1969).

claim must be well founded, of course, and whether the challenged state action conflicts with federal law must be readily discernible from the pleadings. For example, abstention is inappropriate where the federal government has preempted the field, *see Capital Service, Inc. v. N.L.R.B,* 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954) (labor policy), or where there is a direct, facial conflict between state and federal statutes, *see Empire, Inc. v. Ashcroft,* 524 F.Supp. 898 (W.D.Mo.1981). In such cases, the basic premise of abstention—avoiding needless federal court intervention into important matters within the state's jurisdiction to regulate—obviously is lacking. The challenged state action clearly conflicts with preemptive federal law. This, however, is not such a case. The NCUC order on its face sets only retail, intrastate rates, an important matter traditionally within the sole discretion of the states, and does not directly conflict with FERC's wholesale and interstate rate setting powers. Evaluation of the preemption claim would involve detailed factfinding concerning the indirect effects of the NCUC order on the rates established by FERC and the contracts filed with FERC. Where, as here, circumstances are otherwise appropriate for *Burford* abstention, the federal court need not engage in such factfinding as a prerequisite to abstention.

### III.

For the foregoing reasons, the district court's order of dismissal is

AFFIRMED.